# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

------------------------------------------------------------- X
LOUASIA WATTS,

                       Plaintiff,

      - against -                            **Civil Action**

PRET A MANGER (USA) LIMITED,         **Index No.:**
CRISTIAN PEREZ, and KATHERINE LOPEZ,

                       Defendants,

                                         **Jury Trial Demanded**

------------------------------------------------------------- X

## COMPLAINT

Plaintiff Louasia Watts ("Plaintiff"), by and through her attorneys, Arenson, Dittmar & Karban, as and for her Complaint against Pret A Manger (USA) Limited ("Pret"), Cristian Perez ("Perez"), and Katherine Lopez ("Lopez") (collectively, the "Defendants"), alleges upon personal knowledge as to herself and upon information, belief and investigation of counsel as to all other matters as follows:

### NATURE OF THE ACTION

1.     This action arises out of a discriminatory and hostile work environment on the basis of gender and race created and fostered by Defendants.

2.     Plaintiff brings this action pursuant to under the New York City Administrative Code § 8-107, et seq. ("NYCHRL") for compensatory damages, punitive damages and attorney's fees and costs.

1

3. Venue is proper in this County pursuant to New York Civil Practice Laws and Rules ("NYCPLR") § 503.

**PARTIES**

4. Plaintiff Watts is and was, at all relevant times, a female African American adult individual residing in Bronx, NY.

5. Defendant Pret owns and operates an international chain of over 500 shops that offer handmade ready-to-eat sandwiches, salads, and drinks. As part of that chain, Pret has owned and operated shops located at 56th Street and Broadway and Sixth Avenue and 47th Street, New York, New York. Pret is registered in New York County as a foreign business corporation incorporated in England. It maintains a New York office located at 853 Broadway, New York, NY 10003.

6. Upon information and belief, Perez is a Hispanic male resident of the State of New Jersey.

7. Perez was General Manager of Pret's 56th Street and Broadway location during the time Plaintiff worked there from around February 2019 through approximately July 18, 2019.

8. During that time, Perez exercised managerial authority over Plaintiff, acting as Plaintiff's direct supervisor. He had the authority to hire and fire Plaintiff.

9. Upon information and belief, as General Manager, Perez made the decisions for employees of Pret's 56th Street and Broadway shop, including decisions regarding hiring, firing, promotions, work assignment and schedules, and determining the rate of employee pay.

10. Upon information and belief, Lopez is a Hispanic female resident of the State of New York.

11. Lopez was General Manager of Pret's Sixth Avenue and 47th Street location during the time Plaintiff worked there in or around November 2019 and February 2020.

12. During that time, Lopez exercised managerial authority over Plaintiff, acting as Plaintiff's direct supervisor. She had the authority to hire and fire Plaintiff.

13. Upon information and belief, as General Manager, Lopez made the decisions for employees of Pret's Sixth Avenue and 47th Street shop, including decisions regarding hiring, firing, promotions, work assignment and schedules, and determining the rate of employee pay.

## **FACTUAL ALLEGATIONS**

14. Defendant Pret created and fostered a discriminatory and hostile work environment against Plaintiff on the basis of her gender and race.

15. Plaintiff began working at Pret as a Team Member at Pret's 54th Street and Park Avenue location in on or around May 2016. She reported to the shop's General Manager, Karines Ayala.

16. Ayala was from the Dominican Republic and favored Hispanic workers, especially those from the Dominican Republic.

17. Ayala discriminated against Plaintiff by, among other things, scheduling her for less hours than Hispanic workers at the shop.

18. When Plaintiff complained about Ayala's discriminatory behavior, Ayala retaliated by further cutting Plaintiff's hours.

19. During Plaintiff's time working at that location, she was sexually harassed by a kitchen worker named Jaime who, like Ayala, was from the Dominican Republic, and was close with Ayala.

3

20. On a daily basis Jaime would make sexual comments about Plaintiff, such as, "Nice ass" or "Ay, Mami."

21. On a daily basis, Jaime also would make sexual comments about Plaintiff's female co-workers in Plaintiff's presence.

22. On at least several occasions Jaime touched Plaintiff's buttocks. Plaintiff reacted by shoving him away.

23. Plaintiff did not complain because Plaintiff knew that Ayala was close to Jaime and would protect him. Based on past experience, Plaintiff also knew that Ayala's response to Plaintiff's complaints was to cut Plaintiff's hours.

24. In or around September 2017, a coworker of Plaintiff's threatened her by telling her, "I'm going to get someone to fuck you up." Plaintiff told the coworker to leave her alone and reported the incident to Pret's Human Resources department ("HR"). HR responded by suspending both Plaintiff and the co-worker for two weeks. After two weeks when Plaintiff asked to return to work HR transferred her to a different location while keeping Plaintiff's coworker at the same location.

25. Based on HR's punishment of her for reporting the incident where her coworker threatened her, Plaintiff determined that reporting incidents to HR would subject her to retaliation.

26. Plaintiff was transferred to a location at Madison Avenue and 48th Street where she worked from approximately September 2017 through approximately October 2018. There she was put on track by the General Manager, O'Neil Smith, to join the Assistant General Manager program, but the Hispanic Operations Manager named Gustavo removed her while

elevating less qualified Hispanic workers into the program. Frustrated by the lack opportunities, Plaintiff left Pret for a different job in approximately October 2018.

27. In or around February 2019, Plaintiff learned she was pregnant. She could not afford to go on unpaid leave for an extended period of time and she understood that she would not receive paid maternity leave working for her new job. She therefore decided that she needed to return to work at Pret due to its paid maternity leave policy.

28. Therefore, in or around February 2019 Plaintiff returned to work at Pret, this time at as a Team Leader at a shop at 56th Street and Broadway. There she reported to the shop's General Manager, Cristian Perez.

29. During her time working at that location, Plaintiff was sexually harassed by Perez.

30. On a daily basis Perez would make sexual comments about Plaintiff and her female coworkers.

31. By way of example only, several times a week Perez commented on Plaintiff's pregnancy by telling her, "Your butt is getting bigger." He made this comment approvingly, as he expressed a preference for large-buttocked females. He also ogled Plaintiff in a sexual manner on a daily basis.

32. He would also frequently make sexual comments about Plaintiff's female coworkers in the office he shared with Plaintiff and in the kitchen where Plaintiff worked.

33. For example, on a daily basis he would ogle young female employees on the surveillance camera feed that he could see on his computer in the office, exclaiming "damn" or "oof" in a manner that connoted his sexual desire. He sometimes accompanied these comments by biting his lips for extra emphasis. He regularly made the same comments in the same manner

in front of Plaintiff while looking at the buttocks of Plaintiff's coworker, Yanni, or while ogling other female workers from across the kitchen.

34. Approximately once a week, Perez would punctuate his ogling and/or comments with a wolf whistle.

35. Perez's running sexual commentary about female employees' bodies and his sexual desires also included phrases such as, "You know what I would do to that?" or, similarly, "The things I would do to her…"

36. Besides objectifying women, Perez also devalued them by making it clear that he held them in minimal regard. For example, approximately once a week, on occasions when a female had complained to him, acted stupidly in his opinion, or done something else to upset him, Plaintiff would overhear Perez call that female "fucking bitch" or "stupid bitch."

37. Despite Plaintiff's pregnancy, Perez also made a point of asking her to carry heavy loads. When she complained and told him that her doctors had instructed her to avoid heavy lifting to minimize risk to her pregnancy, he responded by saying, "Women are so dramatic." Perez did nothing to alleviate Plaintiff's burdens.

38. Perez's constant sexual comments and ogling offended Plaintiff, made her deeply uncomfortable and made her feel apprehensive around Perez with whom she worked with daily and shared an office.

39. Plaintiff endured the sexually hostile work environment fostered by Perez until she took time off for maternity leave, on or around July 18, 2019.

40. Plaintiff returned to work for Pret in or around November 2019, this time at a shop at Sixth Avenue around 48th Street. There she worked as a Team Leader in the kitchen, reporting to Katherine Lopez, the shop's General Manager.

41. Lopez discriminated against Plaintiff on the basis of Plaintiff's race.

42. Plaintiff was the only Black Team Leader at the shop. She was also the only one whom Lopez consistently scheduled for fewer than 40 hours of work per week.

43. In addition, Lopez assigned Plaintiff and other Black employees to menial tasks such as cleaning the customer bathrooms and taking out garbage a disproportionate amount of times in comparison with their mostly Hispanic coworkers. Plaintiff witnessed and experienced this same phenomenon in the other Pret locations she worked that were run by Hispanic General Managers.

44. Lopez also tolerated widespread use of the N-word at the shop by the shop's mostly-Hispanic kitchen employees.

45. On a daily basis, Hispanic members of the kitchen staff addressed Plaintiff as "Nigger" or "My nigger." For example, if one felt Plaintiff was in his way in the kitchen he would say, "Move, nigger." For another example, a Hispanic kitchen staff member would ask Plaintiff to pass him a certain ingredient by saying, "Can you pass me the mushrooms, my nigger?"

46. On a daily basis, Plaintiff also overheard the Hispanic kitchen workers referring to Black employees as "moreno" or "morenas" (i.e., the black ones).

47. On occasion, Plaintiff heard Hispanic kitchen workers refer to another Black female employee as "fea" (i.e., ugly). On at least one occasion, Plaintiff observed Lopez laughing in response to that comment.

48. Her coworkers' use of the N-word and the other foregoing racial comments offended Plaintiff.

49. Lopez also permitted sexually inappropriate conduct by the male kitchen workers.

7

50. On a regular basis, Plaintiff observed male kitchen workers groping and touching female workers on the buttocks and breasts.

51. Plaintiff also was subjected to male kitchen workers making sexually inappropriate comments such as, "damn" or referring to her as "mama" while looking her up and down. Plaintiff attempted to discourage such behavior by stopping, looking at the kitchen worker, and demanding, "What do you want?"

52. Plaintiffs also observed the male kitchen workers making the same or similar sexual comments about other female employees and customers.

53. This behavior and these comments offended Plaintiff and made Plaintiff very uncomfortable as a female.

54. Lopez observed and overheard this behavior and these comments, as she frequently worked in the kitchen and in her office which was right behind the kitchen, within earshot. Lopez did not object to the behavior or comments.

55. Because Lopez did not object to the behavior or comments despite observing them, and because she favored Hispanic workers generally, Plaintiff thought that complaining about the behavior or comments to Lopez would be futile at best and probably detrimental to Plaintiff's employment. Therefore, Plaintiff did not complain to Lopez.

**FIRST CAUSE OF ACTION**
**Discrimination on the Basis of Race In Violation of Section 8-107 of**
**Title 8 of The New York City Charter and Administrative Code**

56. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

57. As set forth more fully above, Defendants Pret and Lopez subjected Plaintiffs to discrimination, racial harassment, and a hostile work environment based on race.

58. Such discrimination and harassment consisted of, among other things: daily use of the N-word addressed to Plaintiff during her work at the Sixth Avenue location; hearing daily derogatory comments, including the words "fea," "morenos," and "morenas," to describe her Black coworkers; cutting her hours below 40 despite her status as a Team Leader; and the assignment of a disproportionate amount of menial tasks to Plaintiff and her Black coworkers in comparison with her Hispanic coworkers.

59. As set forth more fully above, Defendants Pret and Lopez participated in, approved of, condoned and ratified the racial harassment, discrimination and the hostile work environment on the basis of race perpetrated against Plaintiff.

60. The racial harassment, discrimination and the hostile work environment that Defendants Pret and Lopez perpetrated against Plaintiff were continuing and intentional in nature.

61. As a result of the racial harassment, discrimination and hostile work environment on the basis of race, Plaintiff has suffered, and continues to suffer, inter alia, economic losses as well as pain and suffering, emotional distress, mental anguish, and other non-pecuniary losses, as to which she is entitled to past, present and future compensatory damages, in the maximum amount permitted by law.

62. Because Defendants Pret and Lopez acted with malice or reckless indifference to Plaintiff's rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

**SECOND CAUSE OF ACTION**
**Discrimination on the Basis of Gender In Violation of Section 8-107 of**
**Title 8 of The New York City Charter and Administrative Code**

63. Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

64. As set forth more fully above, Defendants Pret and Perez subjected Plaintiff to discrimination, harassment, and a hostile work environment based on gender.

65. Such harassment and discrimination included inappropriately sexual comments on a daily basis by Plaintiff's supervisor and coworkers directed at her, her female coworkers, and female customers and regular sexually inappropriate touching by her male coworkers of Plaintiff and her female coworkers.

66. As a result of the harassment, discrimination and hostile work environment on the basis of gender, Plaintiff has suffered, and continues to suffer, inter alia, economic losses as well as pain and suffering, emotional distress, mental anguish, and other non-pecuniary losses, as to which she is entitled to past, present and future compensatory damages, in the maximum amount permitted by law.

67. Because Defendants acted with malice or reckless indifference to Plaintiff's rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

### THIRD CAUSE OF ACTION
### Aiding, Abetting, and Inciting In Violation of Section 8-107 of Title 8 of The New York City Charter and Administrative Code

68. Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

69. As set forth more fully above, Lopez aided, abetted, incited, compelled and/or coerced the following unlawful practices, and/or or attempted to do so: the creation, fostering,

10

and approval of racial and sexual harassment, discrimination, and a hostile work environment on the basis of race and gender suffered by Plaintiff.

70. The discrimination that Defendant Lopez aided and abetted against Plaintiff was continuing and intentional in nature.

71. As a result, Plaintiff has suffered economic losses.

72. As a result of the discrimination that Defendant Lopez aided and abetted, Plaintiff has suffered, and continues to suffer, inter alia, pain and suffering, emotional distress, mental anguish, and other non-pecuniary losses, as to which she is entitled to past, present and future compensatory damages, in the maximum amount permitted by law.

73. Because Defendant Lopez acted with malice or reckless indifference to Plaintiff's rights, Plaintiff is entitled to punitive damages in an amount to be determined at trial, but not less than the maximum amount permitted by law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the NYCHRL;

b. An award of monetary damages to be determined at trial for, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, pain and suffering, mental anguish and emotional distress, humiliation and loss of self-esteem.

c. An award of punitive damages;

d. An award of attorneys' fees and costs incurred in this action; and

e. Such other and further relief as this Court deems just and proper.

Dated: New York, New York

February 17, 2023

Respectfully submitted,

**ARENSON, DITTMAR & KARBAN**

By: Avi Mermelstein
420 Lexington Avenue, Suite 1402
New York, New York 10170
Tel:  (212) 490-3600
Fax:  (212) 682-0278
avi@adklawfirm.com

Steven Arenson
420 Park Avenue, Suite 1402
New York, New York 10170
Tel:  (212) 490-3600
Fax:  (212) 682-0278
steve@adklawfirm.com

*Attorneys for Plaintiff*