ARENSON, DITTMAR & KARBAN
Avi Mermelstein
Attorneys for the Debtor
420 Lexington Avenue, Suite 1402
New York, New York 10170
(212) 490-3600

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

In re

**Louasia A. Watts,**

                 **Debtor.**
-------------------------------------------------------X

Hearing Date: July 31, 2023 at 10 AM
Objections Due: July 24, 2023

Case No. 21−10419−mg

Chapter 7 Case

**MEMORANDUM OF LAW IN SUPPORT OF MOTION REOPENING CASE PURSUANT TO 11 U.S.C. §350(b) TO PERMIT THE DEBTOR TO AMEND DEBTOR'S SCHEDULE "A/B"**

LOUASIA WATTS (the "Debtor"), by and through her attorneys, Arenson, Dittmar & Karban, submits this Memorandum of Law in support of her motion for an order to permit the Debtor to reopen the above-captioned bankruptcy case (the "Chapter 7 Case") pursuant to 11 U.S.C. § 350(b) and Rules 5010 and 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to amend her Schedule A/B.

**INTRODUCTION**

The Debtor petitions this Court for an Order reopening her Chapter 7 case for the purpose of amending her Schedule A/B to add a previously undisclosed asset which was erroneously omitted from her bankruptcy petition. Accordingly, pursuant to 11 U.S.C. § 350 and the Court's equitable powers, Debtor seeks an order reopening the above-captioned Chapter 7 case.

1

## JURISDICTION

This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). The relief sought herein is governed by 11 U.S.C. § 350(b) and Bankruptcy Rules 5010 and 9024.

## BACKGROUND

1. On March 4, 2021, the Debtor filed a voluntary petition for bankruptcy (the "Petition"), along with schedules of assets and liabilities (the "Schedules") and statement of financial affairs (the "Statement") under Chapter 7 of the Bankruptcy Code in this Court. *See* Dkt. No. 1; Declaration of Louasia Watts ("Watts Decl."), Ex. B.

2. In Schedule A/B of Debtor's Summary of Assets and Liabilities, Debtor stated that she did not have any "[c]laims against third parties, whether or not [she had] filed a lawsuit or made a demand for payment. Examples: Accidents, employment disputes, insurance claims, or rights to sue." (Watts Decl., Ex. B at 13.) Debtor stated that there were no "[o]ther amounts someone owe[d]" her that were not already listed in the Petition. (*Id.*)

3. At the time she filed her Petition, Debtor was unaware that she had a potential legal claim against her former employer, and was therefore unaware that she was required to disclose this unliquidated, potential claim in her bankruptcy papers. (Watts Decl. ¶¶ 4,7.)

4. On June 11, 2021, the Bankruptcy Court granted Plaintiff's discharge. *See* Dkt. No. 10; Watts Decl., Ex. C.

5. On February 17, 2023, the Debtor filed a Complaint in the Supreme Court of the State of New York, County of Bronx, against her former employer, Pret A Manger (USA) Limited, and her former supervisors, Cristian Perez, and Katherine Lopez (collectively,

"Defendants") (the "Discrimination Claim"). (Mermelstein Decl. ¶¶ 2, 8; Watts Decl., Ex. A.) The Complaint alleged, *inter alia*, that Defendants created and fostered a discriminatory and hostile work environment on the basis of gender and race in violation of the New York City Administrative Code § 8-107, et seq. ("NYCHRL"). *See id.*

6. On May 19, 2023, Defendants filed a motion to dismiss the Discrimination Claim. (Mermelstein Decl., Ex. A.) Defendants argue that the Debtor is judicially estopped from asserting her claims against the Defendants because Debtor's claims are inconsistent with the representations she made to the bankruptcy court and her creditors that she had no known claims against any third parties when filing for bankruptcy.

## RELIEF REQUESTED

7. Debtor seeks entry of an Order pursuant to Bankruptcy Code section 350(b) and Bankruptcy Rules 5010 and 9024, reopening the above-captioned case.

## BASIS FOR RELIEF

8. Bankruptcy Code section 350(b) provides that "[a] case may be re-opened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. §350(b).

9. Likewise, a party seeking relief from an order closing a chapter 7 case may do so pursuant to Bankruptcy Rule 5010 and Bankruptcy Rule 9024, which implements Rule 601 ("Rule 60") of the Federal Rules of Civil Procedure ("FRCP"). Bankruptcy Rule 5010 provides:

> A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. In a chapter 7, 12, or 13 case a trustee shall not be appointed by the United States trustee unless the court determines that a trustee is necessary to protect the interest of creditors and the debtor or to insure efficient administration of the case.
>
> Fed. R. Bankr. Proc. 5010.

3

10. The Code does not define "other cause," and "the decision to reopen a bankruptcy case is discretionary." *In re Kim,* 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017). Accordingly, bankruptcy courts have broad discretion to determine what constitutes "cause" for reopening a bankruptcy case under § 350(b). *See In re Rosillo*, No. 07-11103 (MG), 2007 WL 2230765, at *2 (Bankr. S.D.N.Y. July 31, 2007). The decision to reopen "invoke[s] the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case." *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 104 Fed.Appx. 199, 200 (2d Cir.2004) (internal quotation marks omitted).

11. The burden is on the movant to demonstrate "cause" to reopen the bankruptcy case. *In re Kim,* 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017). Bankruptcy courts have held that "cause" exists where there "is a need to amend schedules to add assets or creditors, or to commence lien avoidance actions." *In re Narcisse*, No. 96-21345 NHL, 2013 WL 1316706, at *5 (Bankr. E.D.N.Y. Mar. 29, 2013) (citing *In re Stein*, 394 B.R. 13, 1 (Bankr. E.D.N.Y.2008)). Cause to reopen a bankruptcy thus includes the need "to administer an undisclosed lawsuit." *In re Easley-Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013) (citing *In re Upshur,* 317 B.R. 446, 451 (Bankr. N.D. Ga. 2004)).

12. In this determination, the bankruptcy court "may consider numerous factors including equitable concerns, and ought to emphasize substance over technical considerations." *In re Emmerling*, 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997) (citations omitted). These factors may include:

> (1) the length of time that the case was closed;
>
> (2) whether a nonbankruptcy forum has jurisdiction to determine the issue that is the basis for reopening the case;

(3) whether prior litigation in the bankruptcy court determined that another court would be the appropriate forum;

(4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen;

(5) the extent of the benefit to any party by reopening; and

(6) whether it is clear at the outset that no relief would be forthcoming if the motion to reopen is granted.

*In re Easley-Brooks,* 487 B.R. at 487.

13. Despite the broad discretion courts are afforded when ruling on a motion to reopen, courts have held that there is "a duty to reopen the estate whenever there is proof that it has not been fully administered, and to permit the addition of an asset to the schedules." *In re Stein*, 394 B.R. at 16 (internal quotations and citations omitted)). Likewise, in considering the benefit to the debtor, "courts generally consider whether reopening the case serves some beneficial purpose, such as allowing claims to proceed in another forum." *In re Arana*, 456 B.R. at 173 (citations omitted).

14. Here, the *Easley-Brooks* factors weigh in favor of reopening Debtor's bankruptcy case to amend Debtor's Schedule A/B to include the pending Discrimination Claim. Addressing each of the aforementioned factors in turn, the first is the length of time that the Debtor's bankruptcy case has been closed. Significantly, nothing in the Code or Bankruptcy Rules sets forth the time in which a motion to reopen a closed case must be made. *See In re Atari*, 2016 WL 1618346, at *5. Here, the length of time since Debtor's case was closed is only a short period – approximately two years. Courts have reopened bankruptcy cases that were closed for much longer periods. *See In re Arana,* 456 B.R. at 175–76 (finding cause to reopen where case had been closed for approximately five years); *In re Stein*, 394 B.R. at 16 (finding cause to reopen for case that had been closed for over eight years).

15. As to the second factor, bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce [their] own prior orders." *In re Atari,* 2016 WL 1618346, at *6 (quoting *Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009)). Further, courts have held that the particular bankruptcy court that issues an order is "undoubtedly the best qualified" to interpret and enforce it. *Id.* (quoting *Texaco Inc. v. Sanders (In re Texaco Inc.),* 182 B.R. 937, 947 (Bankr. S.D.N.Y.1995)). Here, this Court remains the exclusive forum to rule on the matter of reopening Debtor's bankruptcy petition. Accordingly, the second factor weighs in favor of reopening.

16. The third *Easley-Brooks* factor asks whether this Court previously determined that another court would be the appropriate forum. Given that this Court has not done so, this factor also weighs in favor of reopening Debtor's bankruptcy case.

17. The fourth factor asks whether any parties would suffer prejudice should the court grant the Debtor's motion to reopen. However, it is widely recognized that "the fact that a defendant will be required to defend a case on the merits does not constitute legal prejudice that weighs against granting the motion to reopen." *In re Dicks,* 579 B.R. at 709. While here, the Defendants may consider itself disadvantaged if this bankruptcy matter is reopened because it will require them to defend the Discrimination Claim on the merits, "that is not the same as legal prejudice." *Id.* at 709-710 (quoting *In re Arana,* 456 B.R. at 177)(citations omitted). In fact, should this Court not reopen Debtor's bankruptcy matter, "the Defendants may receive a windfall at the creditors' expense by obtaining a dismissal 'based on a technical defense that is far afield from the merits of the claims or defenses.'" *Id.* (quoting *In re Arana*, 456 B.R. at 177). Accordingly, this factor weighs in favor of reopening Debtor's case.

18. Fifth, the benefit to the parties is significant. The inclusion of such a claim as an asset will benefit Debtor's creditors, as it expands the pool of funds from which Debtor's

creditors can be satisfied. No prejudice will be incurred by any of Debtor's creditors should Debtor be permitted to reopen her Chapter 7 bankruptcy case for the purpose of allowing Debtor to accurately reflect her claim for monetary damages arising from Debtor's pending action for employment discrimination and hostile work environment.

19. Should the Court reopen Debtor's bankruptcy case, Debtor's creditors stand to gain a substantial benefit if the Debtor prevails in her Discrimination Claim. The anticipated recovery from the Discrimination Claim exceeds the total liabilities that Debtor owes to her creditors ($52,575.00). (Mermelstein Decl. ¶13; Watts Decl., Ex. B, 8.) Accordingly, "where creditors stand to benefit, they should not be deprived of a potential recovery based on the debtor's failure to disclose an asset." *In re Arana,* 456 B.R. at 176.

20. Additionally, the benefit to the Debtor is significant. Reopening Debtor's Chapter 7 bankruptcy claim could allow some or all of her debts to be discharged, which should appear on her credit report and potentially help her credit rating. In addition, if the recovery on her Discrimination Claim is sufficient to satisfy all other claims, she can potentially recover money herself. 11 U.S.C. § 726.

21. Sixth, the Court may evaluate whether it is clear at the outset that no relief would be forthcoming if the case is reopened. On this factor, courts regularly decline to reopen cases where "there is no merit to the ultimate relief being requested." *In re Atari*, 2016 WL 1618346, at *11 (citation omitted). This is so because, in these situations where the ultimate relief being sought has no merit, reopening the case would be "meaningless." *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1307 (2d Cir.1996). Here, it is clear that reopening Debtor's case would allow her to amend her Schedule A/B, which would allow the estate to

pursue Debtor's Discrimination Claim on the merits. Accordingly, this sixth weighs in favor of reopening.

22. Finally, because the determination of whether to reopen is based on equitable factors, "a debtor's good faith may be a significant consideration." *In re Arana,* 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011) (citations omitted). However, "several circuits and commentators note that 'when the purpose of the motion to reopen is to add an undisclosed asset, the most important consideration is the benefit to the creditors.'" *In re Easley-Brooks*, 487 B.R. at 407 (citations omitted). Accordingly, given the importance of the recovery of creditors, "the test for reopening to administer assets is simply whether the administrative expense and inconvenience outweighs the potential benefit to the estate" and "debtor's good faith is irrelevant." *Id.* (quoting *In re Dewberry*, 266 B.R. 916, 921 (Bankr. S.D.Ga. 2001)).

23. While Debtor's good faith may not centrally factor into the Court's inquiry, other courts in the Second Circuit consider a debtor's intent when assessing whether the reopening of a bankruptcy case is warranted. *See, e.g., In re Dicks,* 579 B.R. at 709; *In re Arana*, 456 B.R. at 176.* In determining whether Debtor's non-disclosure was inadvertent, "a court may consider whether the debtor 'lacks knowledge of [the] existence [of an asset] or a motive to conceal.'" *In re Dicks,* 579 B.R. at 709 (quoting *In re Warmbrand,* No. 10-76058-AST, 2013 WL 10974204 (Bankr. E.D.N.Y. Oct. 17, 2013)). Here, Debtor's failure to disclose her potential claims or lawsuits against the Defendants in her Schedule A/B was not the product of bad faith or fraud. (Watts Decl. ¶¶ 4–12.) At the time of her Petition through the time of her discharge, Debtor was not aware that she had possible claims against Defendants, nor was she informed that anything that had happened to her in her employment with Defendants might give rise to such a claim that she would have to disclose on the Schedules. *See id.* That Debtor's erroneous omission of her

employment Discrimination Claim in her Schedule A/B was inadvertent is a factor further weighing in favor of reopening Debtor's Chapter 7 case.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Debtor's application pursuant to 11 U.S.C. § 350(b) and Rules 5010 and 9024 of the Bankruptcy Rules to the extent prayed for herein, and issue an Order:

(a) Granting Debtor leave to reopen the within Chapter 7 bankruptcy case;

(b) Granting Debtor leave to amend her Chapter 7 Bankruptcy Petition for the purpose of filing an amendment to the Debtor's Schedule A/B, to reflect the pending employment discrimination action as an asset;

(c) Allowing the United States Trustee to Appoint a Chapter 7 trustee to administer the asset; and

(d) For such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 26, 2023

                                              Respectfully submitted,

                                              **ARENSON, DITTMAR & KARBAN**
                                              *Attorneys for Debtor*

                     By:        /s/ Avi Mermelstein_____