**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------x

In re:                                                                          **NOT FOR PUBLICATION**

           LOUASIA A. WATTS,                                      Chapter 7

                                         Case No. 21-10419 (MG)

                         Debtor.

-------------------------------------------------------------------------x

### MEMORANDUM OPINION GRANTING MOTION TO REOPEN CHAPTER 7 BANKRUPTCY CASE

*A P P E A R A N C E S :*

ARENSON, DITTMAR & KARBAN
*Attorneys for the Debtor*
420 Lexington Ave. Suite 1402
New York, NY 10170
By:    Avi Mermelstein, Esq.

FOX ROTHSCHILD LLP
*Attorneys for Interested Parties Pret A Manger (USA) Limited and Katherine Lopez*
101 Park Avenue, 17th Floor
New York, New York 10179
By:    Glenn S. Grindlinger, Esq.
           Timothy A. Gumaer, Esq.

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
Department of Justice
Office of the U.S. Trustee
Alexander Hamilton U.S. Custom House One Bowling Green, Rm. 534
New York, NY 10004
By:    Andrew D. Velez-Rivera, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion (the "Motion," ECF Doc. #15) of Louasia A. Watts (the "Debtor") seeking entry of an Order, (i) granting Debtor leave to reopen the Chapter 7 case (the "Chapter 7 Case"); (ii) granting Debtor leave to amend her Chapter 7 Bankruptcy Petition for the purpose of filing an amendment to the Debtor's Schedule A/B, to reflect the pending employment discrimination action captioned *Louasia Watts v. Pret A Manger (USA) Limited, et al.*, Index No. 802764/2023E, in the Supreme Court of the State of New York, County of Bronx, before the Honorable Judge Veronica G. Hummel (the "State Court Action"), as an asset; (iii) allowing the United States Trustee to appoint a Chapter 7 trustee to administer the asset; and (iv) for such other and further relief as this Court deems just and proper.  The Debtor separately filed exhibits in support of this Motion (the "Exhibits," ECF Doc. #14), including the Declaration of Louasia A. Watts (the "Watts Decl.," ECF Doc. # 14-1) and the Declaration of Avi Mermelstein (the "Mermelstein Decl," ECF Doc. # 14-5).  Attached as Exhibit A is the state court complaint (the "Complaint," ECF Doc. # 14-2), naming as defendants Pret A Manger (USA) Limited ("Pret," or the "Company") and Katherine Lopez ("Lopez," and with Pret, "Defendants," or "Interested Parties").  Defendants filed an opposition to the Motion (the "Opposition," ECF Doc. #19) which relies on the Declaration of Glenn S. Grindlinger (the "Grindlinger Decl.").  The Debtor then filed a reply (the "Reply," ECF Doc. # 21).  The United States Trustee ("UST") also filed a declaration (the "UST Declaration," ECF Doc. # 20) which indicated that the UST took no position on the Motion and provided a transcript of the Debtor's testimony from the Debtor's 341 meeting.

The Court held a hearing  (the "Hearing") on the Motion on July 31, 2023.  At the Hearing, the Court orally granted the Motion and that same day entered an order reopening the

2

Chapter 7 Case.  (*See* ECF Doc. # 22.)  The Court writes separately here to explain its reasoning for granting the motion.

### I.    <u>BACKGROUND</u>

#### A.  The Chapter 7 Case

On March 4, 2021, the Debtor filed a voluntary petition for bankruptcy (the "Petition," ECF Doc. # 1), along with schedules of assets and liabilities (the "Schedules") and statement of financial affairs (the "Statement") under Chapter 7 of the Bankruptcy Code in this Court. (Motion ¶ 1.)

In Schedule A/B, Debtor's Summary of Assets and Liabilities, the Debtor stated that she did not have any "claims against third parties."  (Watts Declaration ¶ 7.)  The Debtor states that at the time she filed her Petition, she was unaware that she had a potential legal claim against her former employer and was therefore unaware that she was required to disclose this potential claim in her Schedules.  (*Id.* ¶¶ 4, 7).  On June 11, 2021, the Bankruptcy Court granted Plaintiff's discharge.  (*See* ECF Doc. # 10.)  The case was closed on June 14, 2021.

#### B.  State Court Action

On February 17, 2023, following the granting of the discharge, the Debtor filed her Complaint in the Supreme Court of the State of New York, Bronx County, against her former employer, Pret A Manger (USA) Limited, and her former supervisors, Cristian Perez, and Katherine Lopez  (the "Discrimination Claim").  (Mermelstein Decl. ¶¶ 2, 8; Watts Decl., Ex. A.)  The Complaint alleges that the Defendants created and fostered a discriminatory and hostile work environment on the basis of gender and race in violation of the New York City Administrative Code §8-107, et seq. ("NYCHRL").  (*See* Complaint.)

3

**C.  Allegations in New York State Court Action**

The Complaint alleges a detailed history of racial and sex-based discrimination.  The allegations are summarized below.

### 1.  Plaintiff's Employment at the Company's Park Avenue Location

Pret owns and operates an international chain of over 500 shops that offer handmade ready-to-eat sandwiches, salads, and drinks.  (*See* Complaint ¶ 5.)  In or around May 2016, the Company hired Plaintiff,[1] a female African American, as a Team Member at its 54th Street and Park Avenue location in New York City ("Park Avenue Location").  (*See id.* at ¶¶ 4, 15.)

As a Team Member, Plaintiff reported to the store's General Manager, Karines Ayala ("Ayala").  (*See id.* at ¶ 15.)  The Complaint alleges that: (1) Ayala "was from the Dominican Republic and favored Hispanic workers, especially from the Dominican Republic" (*id.* at ¶ 16); (2) Ayala "discriminated against Plaintiff by, among other things, scheduling her for less hours than Hispanic workers at the shop" (*id.* at ¶ 17); and (3) when "Plaintiff complained about Ayala's discriminatory behavior, Ayala retaliated by further cutting Plaintiff's hours."  (*Id.* at ¶ 18.)

During her time working at Pret's Park Avenue location, Plaintiff also alleges that she was "sexually harassed by a kitchen worker named Jamie who, like Ayala, was from the Dominican Republic, and was close with Ayala."  (*Id.* at ¶ 19.)  Specifically, Plaintiff asserts that: (1) "[o]n a daily basis Jamie would make sexual comments about Plaintiff, such as, 'Nice ass' or 'Ay, Mami'" (*id.* at ¶ 20); (2) "[o]n a daily basis, Jamie would make sexual comments about Plaintiff's female coworkers in Plaintiff's presence" (*id.* at ¶ 21); and (3) "[o]n at least

---

[1]     Capitalized terms not otherwise defined have the meanings ascribed to them in the Complaint.

several occasions Jamie touched Plaintiff's buttocks," causing Plaintiff to react by "shoving him away." (*Id.* at ¶ 22.)

In or around September 2017, Plaintiff's coworker purportedly "threatened her by telling her, 'I'm going to get someone to fuck you up.'" (*Id.* at ¶ 24.) When Plaintiff reported this incident to the Company's Human Resources Department ("HR"), it responded by suspending both Plaintiff and the co-worker for two weeks. (*See id.*) Upon return from her suspension, HR "transferred [Plaintiff] to a different location." (*Id.*)

### 2. Plaintiff's Employment at the Company's Madison Avenue Location

Plaintiff next worked at the Company's 48th Street and Madison Avenue location ("Madison Avenue Location") from "approximately September 2017 through approximately October 2018." (*Id.* at ¶ 26.) While there, Plaintiff "was put on track by the General Manager, O'Neil Smith, to join the Assistant General Manager program, but the Hispanic Operations Manager named Gustavo removed her while elevating less qualified Hispanic workers into the program." (*Id.*) "Frustrated by the lack of opportunities, Plaintiff left [the Company] for a different job in approximately October 2018." (*Id.*)

### 3. Plaintiff Returns in February 2018 and Works at the Company's Broadway Location

In or around February 2019, Plaintiff learned that she was pregnant. (*See id.* at ¶ 27.) Given that she "could not afford to go on unpaid leave for an extended period of time and she understood that she would not receive paid maternity leave working for her new job," Plaintiff determined that she "needed to return to work at Pret due to its paid maternity leave policy." (*Id.*) Accordingly, in or around February 2019, Plaintiff returned to the Company as a Team Leader at its 56th Street and Broadway location ("Broadway Location") and reported to the store's General Manager, Cristian Perez ("Perez"). (*See id.* at ¶ 28.)

While working at the Broadway Location, Perez allegedly sexually harassed Plaintiff by:
(1) "mak[ing] sexual comments about Plaintiff and her female coworkers" (*id.* at ¶ 30); (2)
"ogl[ing] Plaintiff in a sexual manner" (*id.* at ¶ 31); (3) "puncuat[ing] his ogling and/or
comments with a wolf whistle" (*id.* at ¶ 34); and (4) "devalu[ing] [Plaintiff's female coworkers]
by making it clear that he held them in minimal regard," such as calling them "'fucking bitch'"
or "'stupid bitch." (*Id.* at ¶ 36.) Moreover, despite Plaintiff's pregnancy, "Perez also made a
point of asking her to carry heavy loads" and, when she "complained and told him that her
doctors had instructed her to avoid heavy lifting to minimize risk to her pregnancy, he responded
by saying, 'Women are so dramatic.'" (*Id.* at ¶ 37.) Plaintiff allegedly "endured the sexually
hostile work environment fostered by Perez until she took time off for maternity leave, on or
around July 18, 2019." (*Id.* at ¶ 39.)

### 4. Plaintiff Returns From Maternity Leave and Works at the Company's Sixth Avenue Location

In or around November 2019, Plaintiff returned from maternity leave and worked at the
Company's 48th Street and Sixth Avenue location ("Sixth Avenue Location"). (*See id.* at ¶ 40.)
During her time at the Sixth Avenue Location, Plaintiff was "the only Black Team Leader" and
reported to the store's General Manager, Lopez. (*See id.* at ¶¶ 40, 42.)

Similar to her previous supervisors, Lopez purportedly "discriminated against Plaintiff on
the basis of Plaintiff's race" by scheduling her for fewer than 40 hours of work per week and
assigning "Plaintiff and other Black employees to menial tasks such as cleaning the customer
bathrooms and taking out garbage a disproportionate amount of times in comparison to their
mostly Hispanic coworkers." (*Id.* at ¶¶ 41-43.)

Plaintiff also alleges that Lopez "tolerated widespread use of the N-word at the shop by
the shop's mostly-Hispanic kitchen." (*Id.* at ¶ 44.) For example, "Hispanic members of the

kitchen staff addressed Plaintiff as '[n-word]' or 'My [n-word].'" (*Id.* at ¶ 45.)  Plaintiff also alleges that she "overheard the Hispanic kitchen workers referring to Black employees as 'moreno' or 'morenas' (i.e., the black ones)." (*Id.* at ¶ 46.)

Plaintiff also alleges that Lopez "permitted sexually inappropriate conduct by the male kitchen workers." (*Id.* at ¶ 49.)  Specifically, Plaintiff claims that she: (1) "observed male kitchen workers groping and touching female workers on the buttocks and breasts" (*id.* at ¶ 50); (2) "was subjected to male kitchen workers making sexually inappropriate comments such as, 'damn' or referring to her as 'mama' while looking her up and down" (*id.* at ¶ 51); and (3) "observed the male kitchen workers making the same or similar sexual comments about other female employees and customers." (*Id.* at ¶ 52).  Plaintiff asserts that Lopez "observed and overheard this behavior and comments, as she frequently worked in the kitchen and in her office which was right behind the kitchen, within earshot." (*Id.* at ¶ 54).  According to the Complaint, Plaintiff ended her employment with the Company in February 2020.  (*See id.* at ¶ 11.)

### D.  The Motion to Dismiss

On May 19, 2023, the Defendants filed a motion to dismiss the Discrimination Claim. (Motion ¶ 6.)  The Defendants argue that the Debtor is judicially estopped from asserting her claims because the Debtor's claims are inconsistent with the representations she made to this Court and her creditors that she had no known claims against any third parties when filing for bankruptcy.  (*Id.*)

### E.  Motion to Reopen

The Debtor has now filed the present Motion to request that the Court enter an Order reopening her Chapter 7 case for the purpose of amending her Schedule A/B to add the Discrimination Claim, which was an asset previously omitted from her bankruptcy petition.  The

Debtor contends that her original attorney did not ask her about her work experiences or mention that her work experience could give rise to a legal claim. (Watts Decl. ¶ 6.) As she did not know she had a legal claim, the Debtor states that she marked on her Schedules that she did not have any claims against third parties. (*Id.* ¶ 7.) In or around late 2022, the Debtor states that she learned that the law firm of Arenson, Dittmar & Karban had sued companies for discrimination based on behavior very similar to what she experienced. (*Id.* ¶ 9.) The Debtor states that she did not realize that her bankruptcy may affect that proceeding, and because of this, did not inform her attorneys about the bankruptcy. (*Id.* ¶ 12.) Now that the Debtor understands that she has claims against the Defendants, and that those claims should be a part of her bankruptcy estate, she asks the Court to reopen her bankruptcy so that she can add the claims to her Schedules. (*Id.* ¶ 14.)

### F.  The Opposition

On July 24, 2023, the Defendants timely filed their Opposition to the Motion. The Opposition first argues that the Court should deny the Motion because the Debtor acted in bad faith in not disclosing her claim. (Opposition at 10–13.) The Opposition argues it is not credible that the Debtor was not aware of her claim when she filed her Schedules. (*Id.* at 12.) The Opposition argues that granting the Motion would allow future debtors to conceal their claims to their own benefit, and if caught, simply plead they did not know and reopen their case to pay off their creditors. (*Id.* at 17.) The Opposition further argues that the Debtor's creditors would not benefit from reopening the case. (*Id.* at 17–21.) Finally, the Opposition contends that reopening the case would be futile because the Debtor owes relatively small amounts to various large creditors, who are unlikely to file proofs of claim with the Court if the case is reopened. (*Id.* at 19–21.)

8

### A.  The Reply

The Reply argues that the general rule is that a bankruptcy case should be reopened to allow a claim that is an asset of the estate to proceed against a defendant to prevent a windfall to the defendant.  (Reply at 1.)  The Reply contends that the Defendants here seek such a windfall, insisting that the Court must make an exception to the general rule based on Debtor's alleged bad faith (which the Reply argues did not exist) and an alleged lack of benefit to her creditors.  (*Id.*)  The Reply further argues that no court has deemed the roughly $50,000 in potential benefits to creditors at stake here to be too small to support reopening and therefore that the Court should grant Debtor's Motion.  (*Id.*)

## II.    <u>LEGAL STANDARD</u>

Pursuant to section 350(b) of the Bankruptcy Code, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."  11 U.S.C. § 350(b).  "Cause" is not defined in the Bankruptcy Code, *see, e.g.*, *In re Mortensen*, 444 B.R. 225, 227 (Bankr. E.D.N.Y. 2011) and reopening a bankruptcy case under section 350(b) of the Bankruptcy Code "invoke[s] the exercise of a bankruptcy court's equitable powers, which is dependent on the facts and circumstances of the case."  *Katz v. L.A. Alliance Corp. (In re I. Appel Corp.),* 104 Fed. App'x 199, 200 (2d Cir. 2004) (citation and internal quotation marks omitted).

The burden is on the movant to demonstrate "cause" to reopen the bankruptcy case.  *In re Kim,* 566 B.R. 9, 12 (Bankr. S.D.N.Y. 2017).  Ultimately, the determination whether a case should be reopened for "other cause" is committed to the "broad discretion" of the bankruptcy court.  *Batsone v. Emmerling (In re Emmerling),* 223 B.R. 860, 864 (B.A.P. 2d Cir. 1997).  In exercising this discretion, the court may consider numerous factors including equitable concerns.

9

*In re Mortensen,* 444 B.R. at 227 (citation omitted) (granting motion to reopen Chapter 7 case).

Factors identified for consideration ( the "*Easley* Factors") include: (1) the length of time that the

case was closed; (2) whether a nonbankruptcy forum has jurisdiction to determine the issue

which is the basis for reopening the case; (3) whether in prior litigation the bankruptcy court

determined that a state court would be the appropriate forum; (4) whether any parties would

suffer prejudice should the court grant or deny the motion to reopen; (5) the extent of the benefit

to the debtor by reopening; and (6) whether it is clear at the outset that no relief would be

forthcoming by granting the motion to reopen.  *In re Easley-Brooks,* 487 B.R. 400, 407 (Bankr.

S.D.N.Y. 2013) (internal citation omitted).  When weighing these factors, a court ought to

emphasize substance over technical considerations.  *See In re Atari, Inc.,* No. 13-10176 (JLG)

2016 WL 1618346, at *4 (Bankr. S.D.N.Y. Apr. 20, 2016) (citing *In re Emmerling,* 223 B.R. at

864).

## I.    DISCUSSION

This case presents the issue whether a debtor who does not disclose a potential

employment discrimination claim in a bankruptcy petition and subsequently files a

discrimination lawsuit should be permitted to reopen her case to add the discrimination claims as

an asset to her schedules.  If the Court denies the Motion, the Debtor is highly likely to be unable

to bring her claim in the State Court Action, since the Defendant's arguments that she is

estopped from bringing the claims will likely succeed in state court and will result in dismissal of

her State Court Action.  Declining to reopen the case will also benefit Defendants, who will be

spared the burden of having to defend what may be a meritorious employment discrimination

case on the merits.

On the other hand, if the Court grants the Motion, the Debtor may be rewarded for concealing the claims. Given that the claims against the estate are largely small amounts owed to large financial institutions, it may be that no creditors file proofs of claim, which will allow the Debtor to keep all amounts recovered in the State Court Action, which would have otherwise gone to her creditors. This could also lead to perverse incentives in the larger bankruptcy system. If a debtor knows she can conceal a claim and then plead ignorance and have the claim added back to her schedules, debtors may purposely not include such claims on their schedules.

Bearing these issues in mind, the Court concludes that the relevant factors and considerations weigh in favor of **GRANTING** the Motion and re-opening the case. The lack of disclosure appears to have been inadvertent and opening the case would benefit creditors.

 The Court's analysis will proceed as follows. First, the Court considers whether the Defendants have standing to object to the Motion and concludes they do not. Next, the Court analyzes whether 1) the Debtor acted in good faith and 2) whether the Debtors' creditors will benefit from re-opening the case. Finally, the Court considers whether the *Easley* Factors favor reopening the case. The Court concludes that even if the Defendants did have standing, their Opposition is **OVERRULED** because the relevant factors favor reopening the case.

### A. Standing

The Court finds that the Defendants do not have standing to object to the Motion. The majority of courts have held that defendants in state court actions brought by a debtor do not have standing to oppose the reopening of a bankruptcy case as they are not a "party in interest" under the bankruptcy code. *See In re Riazuddin*, 363 B.R. 177, 183 (10th Cir. BAP 2007) (finding that an alleged tortfeasor did not have standing to oppose a motion to reopen a chapter 7 case to add and prosecute a prepetition personal injury claim); *In re Phillips*, 2012 WL 1232008,

at *3 (Bankr. D.N.J. Apr. 12, 2012) (stating that "defendant is not subject to an injury in fact based upon the reopening of the bankruptcy estate, nor does it hold a 'legally protected interest' that the debtor seeks to affect through the course of the bankruptcy, and is thus not a party in interest"); *In re Kreutzer*, 344 B.R. 634, 639–40 (N.D. Okla. 2006), *aff'd*, 249 F. App'x 727 (10th Cir. 2007) (holding that the meaning of "party in interest" is exclusive to debtors, creditors, or trustees, and defendant in debtor's personal injury action is none of those, his connection to the bankruptcy is merely hypothetical); *In re Miller*, 347 B.R. 48, 52 (Bankr. S.D. Tex. 2006) (holding that defendant in debtor's state court action had no standing to oppose motion to reopen case, and that giving defendant a voice in whether the chapter 7 trustee could sue defendant would be "a little like putting the fox in charge of the hen house").

On the other hand, some courts have held that defendants in a debtor's state court action **do** have standing to oppose the reopening of a bankruptcy case. *See In re Koch*, 229 B.R. 78, 82 (Bankr. E.D.N.Y. 1999) (holding defendant NBA had standing because they have an actual, direct interest in the bankruptcy case in that the NBA claims to be the owner of property which the debtor claims belong to the estate); *In re Lewis*, 273 B.R. 739, 743 (Bankr. N.D. Ga. 2001) (holding defendants in wrongful death action had standing to oppose a motion to reopen because the result of the motion has an impact on the continuation of the state court action).

But the great weight of the authority weighs towards finding that the Defendants do not have standing. *In re Boyd*, 618 B.R. 133, 160 (Bankr. D.S.C. 2020) (collecting cases and holding that "the majority of courts that have addressed the issue have held that defendants in a non-bankruptcy lawsuit do not have standing as a party in interest to challenge a motion to reopen a bankruptcy case to permit the disclosure of a previously undisclosed cause of action, even if that litigant has asserted a judicial estoppel defense in the non-bankruptcy lawsuit").

Here, the Defendants were not creditors or participants in any way in the Debtor's bankruptcy, and their only interest in the case stems from a desire to avoid defending the Discrimination Claim on the merits. The Court concludes, like the majority of courts faced with this issue, that the Defendants do not have standing to object to the Motion. Even assuming that the Defendants have standing, the Court would nevertheless overrule the objection and order the Chapter 7 Case to be reopened. The Court considers the arguments raised in the Defendants' Objection and finds them to be without merit.

### B. Good Faith Requirement

The Debtor argues that given the importance of the recovery of creditors, "the test for reopening to administer assets is simply whether the administrative expense and inconvenience outweighs the potential benefit to the estate" and "debtor's good faith is irrelevant." *In re Easley-Brooks*, 487 B.R. at 407 (quoting *In re Dewberry*, 266 B.R. 916, 921 (Bankr. S.D. Ga. 2001)). Courts in this Circuit have held that "policy considerations militate against adopting a rule that good faith is irrelevant to the reopening of a bankruptcy case to administer undisclosed lawsuits." *In re Lowery,* 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008); *see In re Dicks*, 579 B.R. 704, 709 (Bankr. E.D.N.Y. 2017) (considering whether lack of disclosure of a lawsuit was inadvertent); *In re Arana*, 456 B.R. 161, 176–77 (Bankr. E.D.N.Y. 2011) (considering whether the failure to disclose a lawsuit was the "product of bad faith or fraud"); *see also Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (holding that an individual debtor must "disclose *all* his interests at the commencement of a case") (emphasis added). The Debtor herself admits that courts in this Circuit consider a debtor's intent when deciding whether to reopen a bankruptcy case. (Motion ¶ 23.)

When considering whether a debtor acted in good faith courts consider whether the non-disclosure was inadvertent. A debtor's failure to satisfy a statutory disclosure duty may be deemed inadvertent when the debtor either (i) lacks knowledge of the undisclosed matter or (ii) does not have a motive for its concealment. *See In re Lowery*, 398 B.R. 512, 516 (Bankr. E.D.N.Y. 2008) (internal citations omitted); *Burnes v. Pemco Aeroplex*, 291 F.3d 1282, 1287 (11th Cir. 2002). The Court considers both of these elements in turn.

      1.  <u>Knowledge of the Undisclosed Matter</u>

Here, the Debtor's argument that she was "not aware that she had possible claims" is generally credible. (*See* Motion ¶ 23.) Courts in this Circuit have declined to reopen a case where there is evidence that a Debtor knew about the claim and failed to disclose it on the schedules. *See, e.g., In re Meneses*, 2010 WL 813975, at *3 (Bankr. E.D.N.Y. Mar. 3, 2010).

In *Meneses*, the court declined to reopen a case where a Debtor who was injured in an accident sought to reopen the case for the purpose of scheduling a previously omitted personal injury claim. *Id.* at *3–4. Shortly after filing a bankruptcy petition, which did not disclose the potential personal injury claims, the Debtor filed the personal injury action . *Id.* at *2. The Court declined to reopen the case because it found that the failure to disclose the personal injury action was not inadvertent. *Id.* at *3. The Court reasoned that 1) the Debtor was aware of the cause of the action given the pain and discomfort to his lower back and spine he alleges he suffered from the accident, which caused him to miss two months of work and endure months of medical treatment and testing; 2) the Debtor retained litigation counsel in the personal injury action before the 341 meeting, where he falsely testified that he did not have any personal injury claims, and 3) the Debtor failed to amend his schedules during the four months pendency of the case, despite the fact that the personal injury case was pending during that time. *Id.*

14

Here, in contrast, the lack of disclosure does not on its face appear purposeful.  Unlike the debtor in *Meneses*, the Debtor here did not hire litigation counsel, or even file the case until after the bankruptcy case was closed.  Further, the Reply points out that in order to understand that she had a claim the Debtor would have had to know that the statute of limitation was tolled during COVID and that she had a private right of action to bring the claim.  (Reply ¶ at 8.)  True, the Debtor here did not disclose the existence of the potential claims on her petition and stated under penalty of perjury that "she did not have any "[c]laims against third parties, whether or not [she had] filed a lawsuit or made a demand for payment.  Examples: Accidents, ***employment disputes***, insurance claims, or rights to sue." (*See* Petition at 13 (emphasis added)).  Perhaps the language about employment disputes should have prompted her to disclose the fact that she had had disputes at work, but if the Debtor did not know she had an employment claim, she was not going to magically come to believe she had one merely because the petition mentioned employment disputes.

Further, an injury from an employment dispute is different from a physical injury.  In *Meneses,* the Court found the debtor was aware of the cause of action since he experienced serious pain.  2010 WL 813975 at *3.  Here, while the Debtor was aware that the discriminatory conduct which she alleges she experienced for four years on multiple occasions was wrong, she was no longer employed at Pret by the time she filed for bankruptcy.  (*See* Watts Decl. ¶¶ 2, 4).  Unlike a physical injury where pain would last for years after injury and alert the debtor on a daily basis to the existence of the claim, here, the Debtor was no longer experiencing the discrimination at the time she filed her bankruptcy petition and these claims would not have been top of mind.  (*See generally* Complaint ¶¶ 14–55).  While the Debtor's declaration shows that she was aware that this conduct was unlawful, or at the very least wrong, that is not the same

thing as knowing she had a legal claim.  (*See* Watts Declaration ¶ 4 ("I knew the behavior described in the complaint was wrong and found it very upsetting . . .").)

The Debtor partially places the blame for her non-disclosure on her original attorney for not counseling her to disclose any potential employment claims when she filed her Schedules. (Watts Declaration ¶¶ 6–7).  Some courts that have considered similar instances in this Circuit have not permitted debtors to blame counsel for a debtor's non-disclosure of known claims.  *See e.g.*, *In re Amaya*, 2014 WL 7004848, at *4 (Bankr. E.D.N.Y. 2014).  In *Amaya*, the debtor contended that he did not disclose a potential personal injury case because before filing for bankruptcy he discussed the claim with an attorney and the attorney told him that the claim had no value because of a lack of evidence.  *Id.* at *3.  When, following the discharge and closure of his bankruptcy case, Amaya filed a personal injury action and attempted to reopen his case to schedule the claim, the court rejected the excuse that he relied on the advice of counsel.  *Id.* at *4.  The court held that "[notwithstanding] Mr. Amaya's mistaken belief and reliance on his personal injury counsel's assessment of his case, he had a duty to disclose the existence of his claim to the Court."  But in *Amaya*, the debtor had contacted a personal injury attorney, thus there was evidence he knew of the potential claim.  *Id.*  Here, in contrast there is no evidence that the Debtor had any idea she had a potential claim.  She never visited an employment attorney or otherwise indicated that she knew about the existence of the claim during the pendency of her Chapter 7 Case.

Defendants argue that the courts only find that a debtor did not know about an undisclosed cause of action in narrow circumstances.  (*See* Objection at 14–16.)  For example, in *In re Arana*, the bankruptcy court granted the motion to reopen, finding the debtors omission was inadvertent because they filed *pro se*, and their English language skills were not strong.  *See* B.R.

16

at 174, 176–177.  In *In re Narcisse*, the bankruptcy court once again granted the motion to

reopen a Chapter 7 case, finding that the debtor suffered from a "significant and debilitating

mental impairment that impede[d] his capacity to understand legal proceedings or to read and

comprehend legal documents . . . ."  *In re Narcisse,* No. 96-21345 NHL, 2013 WL 1316706, at

*11 (Bankr. E.D.N.Y. Mar. 29, 2013).  It is true that, here, the Debtor suffers from none of the

impairments found in those cases.  Further, she had an attorney and did not proceed *pro se*.  But

in both *Arana* and *Narcisse*, the personal injury cases were pending before the debtor filed for

bankruptcy so there was no question that the debtors knew on some level that they had a claim.

The court excused the lack of disclosure since they lacked the competence to understand the

need for disclosure.  Here, in contrast, there was no lawsuit pending during the Debtor's

bankruptcy, so the Court is not excusing the lack of disclosure of an obvious claim, but rather

determining whether it is credible that the Debtor did not know of the claim.  Accordingly, the

Court need not take the strict approach counseled by *Narcisse* and *Arana* since it concludes that

the Debtor did not have knowledge of the Discrimination Claim during her Chapter 7 Case.

### 2.  Motivation to Conceal

Additionally, while Debtor plausibly had some motivation to omit the Discrimination

Claim, she could only conceal a claim she knew about.  True, concealment would allow the

Debtor to preserve for her own benefit, and to the exclusion of her creditors, any recovery she

might obtain via successful prosecution or settlement of the case.  The Debtor also only moved

to reopen this bankruptcy case after being challenged by an adversary in her state court

proceeding, rather than prior to filing the case.

While it is certainty possible that the Debtor knew about and purposefully concealed her

claims, the record does not contain the usual markings of intentional concealment such as filing a

17

case during or directly after bankruptcy or consulting a lawyer during bankruptcy. "Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the bankruptcy system. Because the bankruptcy court, trustees, and creditors rely on the information disclosed by a debtor, the importance of full disclosure cannot be overemphasized." *Lowery*, 398 B.R. at 516. But the Court concludes here that the Debtor has not run afoul the Bankruptcy Code's disclosure requirements and thus that reopening the case would not undermine the functioning of the bankruptcy system.

### C. The Benefit to the Parties by Reopening

Though the Court concludes the lack of disclosure was inadvertent, even assuming that the lack of disclosure was purposeful, courts have reopened cases where there is a benefit to the creditors, even after finding a debtor acted in bad faith. *See Easley-Brooks*, 487 B.R. at 406, 410 (reopening bankruptcy case to administer previously undisclosed personal injury claim in light of benefit to creditors despite finding bad faith failure to disclose); *In re Dicks*, 579 B.R. 704, 708 (Bankr. E.D.N.Y. 2017) ("Even if it is assumed that the debtor's failure to disclose was not inadvertent, consideration of other factors, particularly the potential benefit to creditors if the trustee is allowed to administer this asset, compels the conclusion that the case should be reopened"); *In re Amaya*, No. 11-78239-AST, 2014 WL 7004848, at *4–5 (Bankr. E.D.N.Y. Dec. 11, 2014) (same); *In re Warmbrand,* No. 10-76058-AST, 2013 WL 10974204 at *5–6 (Bankr. E.D.N.Y. Oct. 17, 2013) (finding sufficient cause to reopen two bankruptcy cases even where the court found that the debtors "had to have consciousness of their claims against the respective defendants when they filed their bankruptcy claims").

Here, the Debtor argues that the inclusion of the Discrimination Claim will benefit the Debtor's creditors by expanding the pool of funds from which the creditors can be satisfied

because "[t]he anticipated recovery from the Discrimination Claim exceeds the total liabilities that Debtor owes to her creditors." (Motion ¶ 19.) The Court agrees.

Debtor reported in the Petition that her liabilities amount to $4,863.00 in secured claims (one creditor) and $47,716.00 in unsecured claims (thirteen creditors), for a total of $52,579.004 in "primarily consumer debt" and owed to fourteen separate creditors. (Petition at 8, 17–22.) Debtor thus owes each creditor, on average, a total of $3,755.64. (*See id.*) If one ignores the highest amount owed to a single creditor—$19,012.00 in student loans—Debtor would owe each of the remaining thirteen creditors, on average, a total of $2,582.08. (*See id.* at 20.) Many of the claims are owed to large financial institutions such as Bank of America and Barclays Bank of Delaware for credit card purchases. (*See id*. at 18–19.) It is true that some courts in situations similar to the present case have held that reopening a case to allow large institutional creditors to obtain such small amounts is futile. *See e.g.*, *In re Corkran* 2019 WL 965102, at *2 (Bankr. N.D.N.Y. Feb 25, 2019) (declining to reopen a case because 11 creditors were large institutions owed an average of $2,737 and would be unlikely to file a proof of claim); *In re Lowery*, 398 B.R. at 516 (finding $13,259.90 in claims held by four creditors—$3,312.48 per creditor—to be insufficient to reopen). But there are also cases that have found total amounts of unsecured claims less than $52,000 to merit reopening the case.

For example, in *Dicks*, the debtor filed for bankruptcy in 2016, listing unsecured debt in the amount of $32,933, consisting primarily of consumer debts. 579 B.R. at 706. The debtor's filing failed to disclose his personal injury action that had been pending in state court since 2011. *Id*. The claim was valued between $75,000-$100,000, although potentially subject to a lien of over $18,000. *Id*. at 706, 709. The court granted the motion to reopen the bankruptcy case without even looking into the issue whether the debtor's failure to disclose the case was

inadvertent, reasoning that "[e]ven if it is assumed that the debtor's failure to disclose was not inadvertent, consideration of other factors, particularly the potential benefit to creditors if the trustee is allowed to administer this asset, compels the conclusion that the case should be reopened." *Id.* Moreover, the court concluded, "if this case is not reopened based on the Debtor's lack of inadvertence in failing to disclose the asset, the result would be unfair to the Debtor's creditors, who would lose the opportunity to benefit from this asset." *Id.*

Nor does *In re Corkran* convince the Court that the case should not be reopened. There, the debtor owed an average of $2,737 to eleven creditors. At a hearing on the matter, the Assistant U.S. Trustee stated that in his three decades in the U.S. Trustee program, given the passage of time, it is very hard to get major commercial institutions to respond to cases where such small amounts are available. *See In re Corkran*, 2019 WL 965102, at *3. In *Corkran*, "almost six years had passed" since the debtors' discharge, which weighed in the court's reasoning. *Id.* at *2. Here, only two years have passed, making it potentially more likely that creditors would file claims. Further, here, the UST has not taken a position whether the case should be reopened and has not indicated a view one way or the other whether reopening the case will benefit creditors. (*See* UST Declaration ¶ 6 "The United States Trustee takes no position in the matter.")

The Debtor also argues that reopening the case to allow the claim would benefit the Debtor herself, by allowing her to discharge all of her debts, improve her credit rating, and potentially recover money herself. (Motion ¶ 20.) In situations where creditors are unlikely to file a proof of claim, and the debtor stands to benefit the most, courts are not inclined to reopen a case. *See In re Meneses*, 2010 WL 813975, at *4 (stating that "because four years have elapsed since the case was closed, few creditors would likely file proofs of claim. Thus, Debtor stands to

gain substantially from his non-disclosure and reopening of his case, which would minimally, if at all, benefit his creditors.  Given that the Debtor would benefit the most from his failure to disclose, the Court is not inclined to grant the Motion.").  But here, as noted above, since the case was only recently closed, it is not clear that creditors are unlikely to file proof of claims.

Finally, it is also not clear that the Discrimination Claim, which includes claims for mental distress, would entitle the Debtor to a personal injury exemption under 11 U.S.C. § 522(d)(11)(D), such that she could recover proceeds ahead of her creditors.  *See In re Flattery*, 444 B.R. 501, 503–04 (Bankr. D. Mass. 2011 (finding that an employment discrimination claim did not constitute "bodily injury" and thus did not qualify for a personal injury exemption); *In re Ciotta*, 222 B.R. 626, 631 (Bankr. C.D. Cal. 1998)(stating that "in order  to qualify for the [personal injury exemption], a Debtor must demonstrate that a cognizable physical injury has been suffered. The legislature did not intend for the physical effects of mental distress to be exempt under the federal statute, nor did it intend to render 'bodily injury' and mental distress indistinguishable.").  Debtor's counsel also stated on the record  at the Hearing that he did not believe any exemptions applied to the Discrimination Claim.  Thus, the Debtor's creditors are likely to recover ahead of her from any proceeds from the Discrimination Claim.  Given that re-opening the case provides the Debtor's creditors, who previously got nothing, to get some recovery, the Court concludes that re-opening the case would benefit the Debtor's creditors.

**D.  Other Factors**

The Debtors good faith and intent, as well as the benefit to the creditors, are the two most important factors when deciding whether a bankruptcy court should reopen a case.  The remaining factors are less relevant, but they overwhelmingly weigh in the Debtor's favor.

### 3.   The Length of Time that the Case was Closed

Nothing in the Code or Bankruptcy Rules sets the time for which a motion to reopen a closed case must be made.  *See in re Atari*, 2016 WL 1618346 at \*5.  Here, the length of time since the Debtor's case was closed and this Motion to reopen is approximately two years.  Two years is not abnormally long, and courts have reopened bankruptcy cases that were closed for significantly longer periods.  *In re Arana*, 456 B.R. at 175–76 (finding cause to reopen where case had been closed for approximately five years); *In re Stein,* 394 B.R. 13, 16 (Bankr. E.D.N.Y. 2008) (finding cause to reopen case that had been closed for over eight years.)  Because of this, the length of time is not an issue.

Even if the Debtor did delay filing this Motion, the Defendants must show some prejudice from the delay for this factor to be relevant.  *See Emmerling*, 223 B.R. at 865 (stating that "in the absence of some meaningful prejudice, a court of equity would abuse its discretion by barring the reopening of a case.").  Further, "the mere lapse of time [between closing of a case and its reopening] does not constitute prejudice."  *In re Stein*, 394 B.R at 16.

### 4.   Whether a Nonbankruptcy Forum has Jurisdiction to Determine the Issue that is the Basis for Reopening the Case

Bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce [their] own prior orders."  *In re Atari*, 2016 WL 1618346 at \*6 (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)).  Courts have also held that a bankruptcy court that issues an order is "undoubtedly the best qualified" to interpret and enforce it.  *Id.* (quoting *Texaco Inc. v. Sanders* (*In re Texaco Inc.*), 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995)).  This Court granted the discharge of this case and remains the exclusive forum to rule on the matter of reopening.  For this reason, this factor weighs in favor of reopening.

5. <u>Whether Prior Litigation in the Bankruptcy Court Determined that Another Court Would be the Appropriate Forum</u>

As this Court was not aware of the Discrimination Claim at the time the Bankruptcy Case was closed, this Court has not had an opportunity to decide whether any other court would be the appropriate forum to decide that issue. Therefore, this factor is not relevant.

6. <u>Whether any Parties Would Suffer Prejudice Should the Court Grant or Deny the Motion to Reopen</u>

There is no prejudice to the Defendants to reopening the case. "Generally, a party's obligation to defend a claim on the merits in another forum is not the type of 'legal prejudice' that is relevant to whether a bankruptcy case should be reopened." *In re Atari, Inc.*, 2016 WL 1618346, at *9 (internal citation omitted). Here, while the Defendants may consider themselves disadvantaged if the case is reopened because it will require them to defend the Discrimination Claim on the merits, "that is not the same as legal prejudice." *See In re Dicks*, 579 B.R. at 709 (quoting *In re Arana*, 456 B.R. at 177) (citations omitted). On the other hand, the Debtor's creditors will be prejudiced if the Court does not reopen the case because they will be unable to benefit from the Discrimination Claim. For this reason, this factor weighs in favor of reopening the case.

7. <u>Whether it is Clear at the Outset that No Relief Would be Forthcoming if the Motion to Reopen is Granted</u>

Courts regularly decline to reopen cases where "there is no merit to the ultimate relief being requested." *In re Atari*, 2016 WL 1618346, at *11 (citation omitted). Here, reopening the case would allow the Debtor to amend her Schedule A/B, which would allow the estate to pursue Debtor's Discrimination Claim on the merits. (Motion ¶ 21.) As the relief sought would not be futile if the Motion was granted, this factor weighs in favor of reopening the case.

23

### E.  Balance of All Considerations

At the conclusion of the hearing, the Court **GRANTED** the Motion and reopened the case.  The Court's focus in the context of reopening a case to administer new assets "is simply whether the administrative expense and inconvenience outweighs the potential benefit to the estate" and "debtor's good faith is irrelevant."  *In re Dewberry*, 266 B.R. 916, 921 (Bankr. S.D. Ga. 2001).  Here, the creditors could potentially go from getting no recovery to getting a full recovery, which is significant.  These issues raise concerns about the larger disclosure system in bankruptcy: namely that debtors may purposefully fail to disclose claims, knowing they can move to reopen the case later.  But the Court has no evidence that there was a purposeful concealment.  Further, the Bankruptcy Code has other remedies for bad faith misconduct and the creditors should not be punished for potential bad faith.  *See In re Easley-Brooks*, 487 B.R. at 406 n.4 (noting that courts have recognized that bad faith can be addressed by methods other than declining to reopen, such as disallowance of exemptions).  Finally, Defendants should not get a windfall, and not have to defend the Discrimination Claim on the merits, merely because the Debtor did not understand she had a claim when she filed for bankruptcy.

### III.    CONCLUSION

For the reasons stated above, the Motion was **GRANTED**.

Dated:    August 25, 2023
          New York, New York

                              *Martin Glenn*
                              MARTIN GLENN
                    Chief United States Bankruptcy Judge

24